WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Tracy Ferring,<br><br>            Plaintiff,<br><br>v.<br><br>Bank of America NA, et al.,<br><br>            Defendants. | No. CV-15-01168-PHX-GMS<br><br>**ORDER** |
| ACE Private Risk Services,<br><br>            Counterclaimant,<br><br>v.<br><br>Russell Tracy Ferring,<br><br>            Counterdefendant. | |

Pending before the Court is Defendant Bank of America, N.A.'s ("BANA") motion to dismiss Plaintiff Russell Tracy Ferring's ("Ferring") first amended complaint ("FAC") (Doc. 13). (Doc. 14.) Also pending is Ferring's motion to dismiss Defendant ACE Private Risk Service's ("ACE") counterclaim for declaratory judgment pursuant to Rule 12(b)(6) and A.R.S. § 12-1831. (Doc. 20.) For the following reasons, the Court grants BANA's motion and strikes Ferring's motion.

## BACKGROUND

In September 2014, Ferring negotiated with "Aaron Cappel" ("Cappel") for the purchase of an automobile. FAC ¶¶ 17, 29. Ferring and Cappel agreed on a $34,000

purchase price.  FAC ¶ 18.  The funds were to be transferred from Ferring's BANA account to Cappel's BANA account.  FAC ¶¶ 6, 29, 31.  BANA opened Cappel's account under the name of Joel Scott, a California attorney.  FAC ¶¶ 6, 29, 31.  Ferring purportedly received instructions to transfer the funds from "Joel Scott Attorney at Law Negotiation Lawyers in San Mateo, CA[.]"  FAC ¶ 17.  The instructions provided an account name, ADA Council Services ("ADA Account"), a BANA account number, and an attached contract for the purchase of the automobile signed by Cappel and Scott.  FAC ¶¶ 17, Ex. 3, 18, Ex. 4.  The instructions also asked Ferring to include in the wire transfer memo line: "Motor Vehicle Contract 7377."  FAC ¶ 17, Ex. 3.

On October 1, 2014, Ferring, who had been a BANA customer for 33 years, went to his BANA branch to make the transfer.  FAC ¶ 18.  Ferring presented the executed contract to a BANA associate and instructed her to transfer $34,000 into the ADA Account.  FAC ¶ 18.  While discussing the transfer, Ferring asked the associate when the ADA Account had been opened.  FAC ¶ 18.  The associate responded that she could not tell Ferring that information, but "it's a [BANA] account so I'll run the transaction."  FAC ¶ 18.  The associate did not contact a manager to determine if she could disclose the age of the account.  FAC ¶ 19.  The ADA Account was "new," and Ferring alleges he would not have approved the transfer if the associate had told him the age of the account.  FAC ¶ 19.  Ferring, however, approved the transaction and BANA transferred the $34,000 from Ferring's account into the ADA Account that same day.  FAC ¶ 29.  The transfer receipt stated "[a]ll items are . . . subject to verification and conditions of the Rules and Regulations of this Bank and as otherwise provided by law."  FAC ¶ 15.

Ferring never received the automobile; instead Cappel absconded with the money.  FAC ¶¶ 8, 29.  According to Ferring, "Cappel was an imposter who had no authority from attorney Joel Scott."  FAC ¶ 7.

Ferring alleges that BANA never took steps to verify the validity of the ADA Account, including confirming Cappel's identity, his purpose for the account, his residence, occupation, social security number, or his EIN number.  FAC ¶ 31.  Nor did

BANA contact Joel Scott to verify whether he in fact intended to open the ADA Account on Cappel's behalf. FAC ¶¶ 19, 31.

On various pages of its website and through customer correspondence, BANA publishes statements about its efforts to protect customers from fraud. FAC ¶¶ 20, 21, Ex. 5. Ferring alleges, on information and belief, that BANA also has internal policies and procedural controls designed to safeguard its customer's accounts. FAC ¶ 22. Federal statutes further impose reporting and record keeping requirements on BANA in an effort to prevent financial crimes like money laundering and fraud. FAC ¶ 12.

## DISCUSSION

### I.  Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than a mere possibility of misconduct. *Id.*

/ / /

## II. Analysis

### A. BANA's Motion to Dismiss

Ferring makes claims for negligence and negligent supervision against BANA. One of the four elements Ferring must establish to bring a negligence claim is "(1) a duty requiring the defendant to conform to a certain standard of care . . . ." *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 231 (2007) (en banc) (citation omitted). Whether a duty exists is a matter of law; and, "absent some duty, an action for negligence cannot be maintained." *Id.* (citation omitted).

Ferring contends that BANA owes him a duty of care when opening new accounts for other unrelated third-party customers to "reasonably ensure that [a] new account is not a fake account which could foreseeably harm existing customers." FAC ¶ 46. According to Ferring, the duty arises for two reasons: (1) Ferring is a customer of BANA; and (2) public policy supports such a duty.

#### a. Ferring's Customer Relationship With BANA

Arizona law recognizes that banks owe certain ordinary duties of reasonable care to their customers. *See, e.g.*, *Cunningham v. World Sav. Bank, FSB*, 660 F. Supp. 2d 1078, 1088 (D. Ariz. 2009) ("[A] bank owes customers the duty to exercise ordinary or reasonable care."); *cf. Kesselman v. Nat'l Bank of Ariz.*, 188 Ariz. 419, 421, 937 P.2d 341, 343 (Ariz. Ct. App. 1996) ("Generally, banks have a duty to their 'customers not to disclose the customers' financial conditions to third parties.'") (citation omitted); *Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 601, 307 P.3d 1025, 1028 (Ariz. Ct. App. 2013) (noting that plaintiffs were not customers of Wells Fargo in holding that plaintiffs failed to establish that Wells Fargo owed them a duty of care based on the relationship between the parties); *Stern v. Charles Schwab & Co., Inc.*, 2010 WL 1250732, at *3–4 (D. Ariz. Oct. 16, 2009) (acknowledging an ordinary duty of reasonable care between a bank and its customer, but rejecting plaintiff's argument that the customer relationship alone could serve as a sufficient basis on which to impose a duty of disclosure on a bank absent some special relationship between the parties). Nevertheless,

Arizona law also makes clear that a bank's duty of reasonable care to its customers does not extend so far as Ferring alleges.

Ferring cites no case extending a bank's duty to prevent other customers who have the goal of perpetrating a fraud from signing up for new accounts. In fact, Arizona law is quite to the contrary.

In *Gilbert*, as part of the development of a shopping center, lenders deposited money into an escrow account with Chicago Title. *Gilbert*, 307 P.3d at 1026. Borrowing entities submitted disbursement requests to Chicago Title, which then disbursed payments upon approval from the lenders. *Id.* at 1026–27. One subcontractor completed work and sought payment through the borrowing entities. *Id.* Unbeknownst to the subcontractor, one of the borrowing entities fraudulently opened a corporate bank account under the subcontractor's name at Wells Fargo, and started requesting and depositing payments from the escrow account made out to the subcontractor's name. *Id.* Once discovered, the lenders sued Wells Fargo and alleged it "acted negligently by allowing [one of the borrowing entities] to open the corporate bank account without determining whether [the borrowing entity] was authorized to act on behalf of [the subcontractor] and by failing to obtain documentation that proved that [the subcontractor] existed." *Id.* The Arizona Court of Appeals analyzed the relationship between the parties and held that, absent some "special relationship," the lenders failed to establish that Wells Fargo owed them a duty of care to ensure the validity of another customer's corporate account including a duty to check on the existence of the underlying subcontractor's named on the account. *Id.* at 1028.

Arizona law does recognize "[d]uties [that] may also arise from a special relationship between the parties, a relationship that may find its basis in contract, family relations, or undertakings." *Stanley v. McCarver*, 208 Ariz. 219, 221, 92 P.3d 849, 851 (2004) (en banc). As a result, Arizona courts have recognized that banks may owe a duty to one party for the actions of a third-party; however, cases analyzing the presence of such a duty look again for a "special relationship" between the parties. Ferring alleges

that he has been a customer with BANA for 33 years. FAC ¶ 5. Even accepting that allegation as true, the age of the relationship does not make it a "special relationship" for purposes of extending the duty owed by BANA to Ferring. Arizona law holds that an ordinary banking relationship, no matter the length, is insufficient on its own to give rise to the duty that Ferring alleges. *See Stern v. Charles Schwab & Co., Inc.*, 2010 WL 1250732, at *3 (D. Ariz. Oct. 16, 2009) (The "relationship between a bank and an ordinary customer is no more than that of debtor and creditor.").

In *Kesselman*, the Arizona Court of Appeals dealt with the issue of whether a bank owes a duty to disclose irregularities detected in a customer's fiduciary account to third-party beneficiaries. *Kesselman*, 937 P.2d at 343. It held that under Arizona law a bank owes no duty to disclose even known fraudulent activity of a customer's account to others unless a special or fiduciary relationship exists between the parties. *Id.* at 345–47. Examples of special relationships cited in *Kesselman* include: (1) where a bank president personally assured a third-party builder that all pay requests to the bank would be honored knowing the original loan secured to pay the builder had already been depleted, *see generally R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 766 P.2d 928 (N.M. Ct. App. 1988); (2) where the "bank knows or has reason to know that the customer is placing his or her trust and confidence in the bank, and is relying on the bank so to counsel and inform them" where the bank had dealt directly with the plaintiff in executing a mortgage and had failed to discuss the documents governing the rights and liabilities of the parties, *see State Bank v. Stoeckmann*, 417 N.W.2d 113, 118 (Minn. Ct. App. 1987); (3) where the bank directly assured the plaintiff that its customer's investments "were sound and had passed IRS scrutiny," s*ee Hooper v. Barnett Bank*, 474 So.2d 1253, 1255 (Fla. Ct. App. 1985); and (4) where a bank's loan officer not only held actual knowledge of the fraudulent activities of the lender, but also "received 'fringe' benefits from them, and actively participated in the affairs and decisions of" the lender, *see Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d. 648, 650 (Minn. 1976). *See Kesselman*, 937 P.2d at 344–46. Here, Ferring does not allege that BANA assured him that the money transfer

1   would indeed buy him an automobile.  Nor did Ferring allege any "special relationship" between BANA and Cappel or any other holder of the ADA Account such that it owed Ferring a duty related to the ADA Account; thus, the duty Ferring seeks to impose here does not exist.  And to the extent Ferring attempts to argue that BANA breached some other duty due to its associate's refusal to disclose the age of the ADA Account, Arizona law is clear that "[g]enerally, banks have a duty to their 'customers *not* to disclose the customers' financial conditions to third parties.'")  *Id.* at 343 (emphasis added).

Ferring's FAC cites *Patrick v. Union State Bank*, 681 So.2d 1364 (Ala. 1996) for the proposition that a bank indeed does owe its customers a duty to ensure new accounts are valid.  *Patrick* is not Arizona law; moreover, *Patrick* is factually distinguishable.  In *Patrick*, an imposter stole plaintiff's temporary driver's license, opened a checking account in the plaintiff's name with defendant bank, and then wrote several worthless checks resulting in the plaintiff's arrest and incarceration.  *Id.* at 1365.  Here, Ferring's alleged injury does not stem from BANA allowing an imposter to open an account in Ferring's name based on fraudulent and incomplete documentation related to Ferring.  The duty espoused in *Patrick* cannot be extended to encompass the broad duty for which Ferring argues.

While Arizona law recognizes that "[d]uties may . . . find its basis in contract," Ferring does not raise a contractual based duty of care allegation in his FAC.  *Stanley*, 92 P.3d at 851.  Ferring does reference his transfer receipt, however, which states that "[a]ll items are credited subject to verification, collection and conditions of the Rules and Regulations of this Bank and as otherwise provided by law[,]" as well as BANA's mission statement, and other BANA articles that discuss the issue of fraud in banking and BANA's efforts to curb that threat.  FAC ¶¶ 15, 21.  To the extent Ferring implicitly alleges that BANA owes him a duty of care rooted in the transfer receipt, his allegations, as they stand, fail to state a claim, since a simple recitation of the receipt's language does not give rise to a duty in tort.  Nor do BANA's marketing materials give rise to such a duty.

Accordingly, while Ferring's ordinary customer relationship with BANA imposes a general duty of reasonable care, absent a "special" or fiduciary relationship, Ferring's status as an ordinary bank customer does not extend to require BANA to ensure the validity of every newly opened unrelated third-party customer account.[1]

### b. Public Policy

Ferring alleges that as a matter of public policy the Bank Secrecy Act ("BSA"), compliance requirements set forth by the Office of the Comptroller of the Currency ("OCC"), and BSA rules enacted by the Department of the Treasury each establish a duty in BANA to exercise reasonable care by ensuring the validity of all new unrelated third-party customer accounts.

Arizona courts have already held that the BSA's language "was not intended to create a duty on the part of banks to third-parties . . . [in fact,] [t]he [BSA] imposes on banks an obligation to the government, not to a remote victim." *Id.* at 1028–29 (*citing* Restatement (Second) of Torts § 288, cmt. B (1965)). Thus, the BSA does not authorize a private right of action for its violation. *See id.* at 1029. As a result, the *Gilbert* court "decline[d] to recognize a duty of care that is predicated upon the statute's monitoring requirements." *Id.* (citation omitted). Nor do the OCC regulations establish a duty, since they merely list procedures for monitoring BSA compliance. *See* 12 C.F.R. § 21.21 (2014). Therefore, Ferring cannot rely on the BSA or the OCC regulations to establish a duty.

---

[1] Ferring argues that *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 484, 38 P.3d 12, 22 (2002), recognizes a special circumstance exception, allegedly apparent here, that imposes a duty on a BANA associate to disclose the age of the ADA Account to Ferring. Yet Ferring did not raise such a duty as part of his claim for negligence. Regardless, the Court already discussed the non-existence of a special relationship in this case, which is required for a bank to owe a duty to disclose third-party account information. Thus, the Court need not discuss the merits of whether an actual duty to disclose exists here since it does not serve as a basis for any of Ferring's causes of action. *See Kesselman*, 937 P.2d at 343; FAC ¶¶ 45–49 (outlining Ferring's negligence claim).

Ferring finally alleges that BANA failed to "apply internal control procedures to reasonably ensure the safety of existing customer funds, [and] implement its training programs to reasonably ensure the safety of customer funds in light of industry standards . . . ." FAC ¶ 46.  The *Gilbert* court adopted the rule expressed in *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756 (Cal. Ct. App. 2013) stating that a "[v]iolation of a self-imposed rule does not create actionable negligence unless plaintiff (1) suffers the type of harm sought to be prevented by the rule and (2) is a member of the class of people for whose protection the rule was promulgated." *Id.* at 762.

Ferring's complaint neither attaches nor references any internal BANA policy or procedural control enacted to prevent the opening of fraudulent third-party accounts to which Ferring would be a beneficiary.  And Ferring's citations to BANA's published statements about its efforts to protect customers from fraud do not constitute such "self-imposed" rules.  Accordingly, without any internal policy or procedural control on which to apply the *Software Design* factors, Ferring's complaint fails to state a plausible claim under *Iqbal*.  *See Iqbal*, 566 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Even assuming the existence of internal policies and procedural controls, Ferring fatally asserts and relies on a legal conclusion that the Court need not accept as true that "(a) plaintiff is a member of a class for whose protection the above referenced internal bank policies were created; and (b) plaintiff has suffered the type of harm sought to be prevented by said laws, regulations, bank rules and regulations, internal controls and training programs." FAC ¶ 27.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 566 U.S. at 678. Ferring fails to otherwise allege that BANA's internal policies put in place to comply with anti-money laundering laws are directed at protecting Ferring and not just BANA itself.  *See, cf. Gilbert*, 307 P.3d at 1030 ("[A]ccount opening and screening procedures

exist to protect the banks, not strangers with whom the banks do no business."). Furthermore, Ferring's FAC does not allege that BANA's internal policies exist, as least in part, to protect Ferring from injury due to fraudulent new unrelated third-party customer accounts. Consequently, Ferring's FAC fails to allege the existence of a duty born out of BANA's internal policies.

Finally, Ferring's reference to BANA's violation of industry standards does not create a duty, since "[s]tandard industry practice addresses primarily whether there has been a breach of duty," and not whether a duty exists. *Id.* at 1030 (*quoting Diaz v. Phoenix Lubrication Svc., Inc.*, 224 Ariz. 335, 341, 230 P.3d 718, 724 (Ariz. Ct. App. 2010)). As such, a breach of the industry standard does itself impose a duty on BANA.[2]

Neither Ferring's customer relationship nor public policy creates the broad duty Ferring alleges exists between the parties. Accordingly, BANA's motion is granted as to Ferring's negligence and negligent supervision claims.[3]

### B. Ferring's Motion to Dismiss

Ferring failed to attach or file a certification of conferral; therefore, pursuant to this Court's Order (Doc. 5) requiring "the parties [to] meet and confer prior to filing of a motion to dismiss[,]" and requiring "motions to dismiss [to] contain a certification of conferral indicating that the parties have conferred to determine whether an amendment could cure a deficient pleading, and have been unable to agree that the pleading is curable by a permissible amendment," the Court strikes Ferring's motion to dismiss.

Nevertheless, the issue on which ACE seeks declaratory judgment, whether ACE's insurance policy covered Ferring's fraudulent transaction, is also core to Ferring's bad faith denial of coverage claim. The issue, therefore, will be resolved in due course

---

[2] Ferring's negligent supervision claim relies first on the possibility that a BANA employee committed a tort. *See Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352 (Ariz. Ct. App. 2004) ("For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort."). Ferring only alleges negligence that fails as a matter of law. As a result, Ferring's negligent supervision claim is dismissed.

[3] The Court does not reach BANA's argument invoking the economic loss rule.

- 10 -

regardless of which party raises the claim.

## CONCLUSION

For the foregoing reasons, BANA's motion to dismiss shall be granted and Ferring's motion to dismiss counterclaim shall be stricken.

**IT IS HEREBY ORDERED** that:

1. BANA's Motion to Dismiss (Doc. 14) is **GRANTED** and the Amended Complaint (Doc. 13) is dismissed.

2. Ferring's Motion to Dismiss Counterclaim (Doc. 20) is **STRICKEN** and the Clerk of Court is directed to strike the Motion to Dismiss Counterclaim.

3. Ferring's Motion for Hearing (Doc. 22) is **DENIED**.

4. ACE's Motion to Strike (Doc. 25) is **GRANTED**.

5. Ferring shall file an answer to the Counterclaim (Doc. 17) **within fourteen (14) days** of the date of this Order.

Dated this 3rd day of February, 2016.

*[signature]*
Honorable G. Murray Snow
United States District Judge

- 11 -